UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- x
NATIONAL LABOR RELATIONS BOARD,    :
    :
         Applicant,    :
    :        **MEMORANDUM**
    -against-    :        **AND ORDER**
    :
ATLANTIC VEAL & LAMB, LLC and OHIO    :        23 Misc. 1130 (BMC) (VMS)
FARMS PACKAGING CO., LTD.,    :
    :
         Respondents.    :
----------------------------------------------------------- x

**Vera M. Scanlon, United States Magistrate Judge:**

    The National Labor Relations Board (the "NLRB" or the "Board") filed an application

seeking an Order under 29 U.S.C. § 161(2) compelling Respondents Atlantic Veal & Lamb, LLC

("Atlantic Veal") and Ohio Farms Packaging Co., Ltd. ("Ohio Farms") (together,

"Respondents") to comply with two administrative subpoenas issued by the NLRB, see ECF No.

1-1, and later revised, see ECF Nos. 34-1 and 34-2 (the "Application").  The Honorable Brian M.

Cogan referred the Board's Application to this Court as a discovery dispute for a determination.

Having considered the parties' submissions and having conducted three conferences with

counsel, for the reasons set forth below, the Board's Application is granted in part and denied in

part.  The Board's request for attorneys' fees and costs is denied without prejudice.  Respondents

must respond to the Board's investigative subpoenas duces tecum as set forth below.

    **I.  Legal Standards**

    In reviewing an application to enforce an administrative subpoena, courts must "defer to

the agency's appraisal of relevancy, which must be accepted so long as it is not obviously

wrong."  In re McVane, 44 F.3d 1127, 1135 (2d Cir. 1995) (internal quotation marks omitted).

"In enforcing administrative subpoenas, courts broadly interpret relevancy[.]"  N.L.R.B. v. Am.

1

Med. Response, Inc., 438 F.3d 188, 193 (2d Cir. 2006).  "The Board's subpoena must be enforced if it furthers a legitimate statutory purpose, if the information sought is reasonably relevant to that purpose, if the information sought is not already within the Commissioner's possession, and if the Board has observed the proper statutory procedures."  N.L.R.B. v. Bacchi, No. 04 Misc. 28 (ARR), 2004 WL 2290736, at *2 (E.D.N.Y. June 16, 2004) (citing United States v. Stuart, 489 U.S. 353, 359, 109 S. Ct. 1183, 1188 (1989)); see United States v. Morton Salt Co., 338 U.S. 632, 652, 70 S. Ct. 357, 369 (1950) ("it is sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant").  "A court's authority to review a subpoena's relevance is limited to determining whether the evidence sought 'touches a matter under investigation.'"  Bacchi, 2004 WL 2290736, at *3 (quoting Sandsend Fin. Consultants Ltd. v. Federal Home Loan Bank Bd., 878 F.2d 875, 882 (5th Cir. 1989)).

A respondent opposing enforcement must show "that the subpoena is 'unreasonabl[e]' or was issued in bad faith or for an 'improper purpose,' or that compliance would be 'unnecessarily burdensome.'"  RNR Enterprises, Inc. v. S.E.C., 122 F.3d 93, 97 (2d Cir. 1997) (quoting Sec. & Exch. Comm'n v. Brigadoon Scotch Distrib. Co., 480 F.2d 1047, 1056 (2d Cir. 1973)) (emphasis in original).

## II. Remaining Disputes

### a. General Objections

#### i. Relevance

The parties dispute the relevance of nearly all of the Board's requests.  In its memorandum in support of the Application, the Board identified several subpoena requests that it argued are relevant to its inquiry into whether Respondents are alter egos and/or a single employer under the National Labor Relations Act—the Board did not originally argue that these

requests were relevant for any other purpose.  See Board Memo., ECF No. 1-2 at 8-17.  In a later filing in which the parties set forth their remaining disputes, the Board argued that some of these same requests were not only relevant to the alter ego/single entity issue but were also relevant to the Board's investigation of whether work was transferred from Atlantic Veal to Ohio Farms. See generally Joint Letter, ECF No. 34.

Respondents recently stipulated that they are alter egos and a single employer under the Act; in light of this agreement, the Board withdrew some of the subpoena requests, but it did not withdraw some of the requests as to which it initially only argued were relevant to the alter ego/single entity issue.  See Letter and Stipulation, ECF No. 39; Board Memo., ECF No. 1-2 at 8-17.  In light of the parties' stipulation, the Court will only evaluate whether the remaining requests are reasonably relevant to the Board's investigation into the transfer of work. Respondents are not required to produce documents relevant only to the alter ego/single entity issue.

The Board has made an insufficient showing that certain documents relating to Respondents' day-to-day operations are reasonably relevant to its investigation of the bargaining unit work-transfer allegation.  Namely, four of the requests are overbroad based on the Board's relevance showing.  First, the Board requests "[b]ank statements, checks, records of deposits and withdrawals and all other documents connected with all financial accounts and instruments of deposit."  See Revised Atlantic Veal Subpoena, ECF No. 34-1 ¶ 22; Revised Ohio Farms Subpoena, ECF No. 34-2 ¶ 23 (later numbered ¶ 21).  Although bank statements could arguably be relevant to the investigation, the Board has not sufficiently demonstrated that individual "checks, records of deposits and withdrawals and all other documents connected with all financial accounts and instruments of deposit" are reasonably relevant.  As written, these

requests would appear to encompass all aspects of Respondents' operations, well beyond those arguably tied to any transfer of work.  The Board has not explained its need for the individual documents, the information as to which would likely be included in the bank statements, which would be less burdensome to produce.

Second, rather than seeking documents summarizing Respondents' receipt of goods, materials and services during the relevant time period, the Board seeks "[c]orrespondence, contracts, agreements, bills of sale, bills of lading, invoices, orders, receipts and any other documents showing the receipt of goods, materials, or services. . . ."  See Revised Atlantic Veal Subpoena, ECF No. 34-1 ¶ 27; Revised Ohio Farms Subpoena, ECF No. 34-2 ¶ 28 (later numbered ¶ 26).  The Board has not sufficiently demonstrated that the individual documents are reasonably relevant, when summary documents would appear to be sufficient to assess Respondents' claims as to loss of revenue or changes in the nature and scope of operations.  As written, the Board's request would appear to encompass all of Respondents' individual sales transactions, as well as inputs into their operations, far exceeding the Reasonable scope of the inquiry into any transfer of work.  That some of these materials may be relevant cannot be used to justify such a sweeping request for documents encompassing almost all of Respondents' operations.

Third, the Board seeks "[d]ocuments that show the purchase, rental, or acquisition of all supplies, furniture, equipment, facility, vehicle, or other asset used by [Atlantic Veal/Ohio Farms] in the operation of its business at any time during the period covered by this subpoena."  See Revised Atlantic Veal Subpoena, ECF No. 34-1 ¶ 30; Revised Ohio Farms Subpoena, ECF No. 34-2 ¶ 31 (later numbered ¶ 29).  The Board has not sufficiently demonstrated the relevance

of its request as to "all supplies," which appears to cover all of Respondents' day-to-day operations, and is therefore beyond the scope of the inquiry.

Fourth, the Board seeks "[d]ocuments showing all credit or charge card accounts controlled by [Atlantic Veal/Ohio Farms] . . . including documents showing all transactions on such accounts, payments to such accounts, and balances." See Revised Atlantic Veal Subpoena ECF No. 34-1 ¶ 32; Revised Ohio Farms Subpoena, ECF No. 34-2 ¶ 33 (later numbered ¶ 31). Respondents have not sufficiently demonstrated that these documents are reasonably relevant to the investigation into the transfer of work.  Although summaries and balances of all credit or charge card accounts may be relevant, as written, the requests appear to cover all of Respondents' transactions and are well beyond the scope of the inquiry into the change of venue for some operations.

As discussed below, the Court modifies the scope of the aforementioned requests, and Respondents only need to respond to the requests in part.

### ii.  Confidentiality

Respondents object to nearly all of the Board's requests on the grounds that the requests seek confidential and/or proprietary information.  Counsel for Respondents represented during the August 3, 2023 status conference that execution of a confidentiality agreement would resolve their confidentiality objections.  Accordingly, the Court will permit Respondents to designate documents as confidential, and the Board must treat such documents as confidential pending the execution of a confidentiality agreement.  The Court deems Respondents' confidentiality objections resolved and does not address them further below.

### iii.  Redundancy

Ohio Farms objects to almost every request in the Ohio Farms subpoena as redundant of corresponding requests in the Atlantic Veal subpoena.  The Board confirmed during the August

10, 2023 status conference that, to the extent that Atlantic Veal and Ohio Farms share responsive documents, it will accept a single production as responsive to corresponding requests in the respective subpoenas.  See 8/10/2023 Transcript, ECF No. 41 at 31:10-15.  These objections are moot.

### iv.  Time Period Covered By The Subpoenas

The Board seeks documents relating to the time period of March 1, 2020 through December 31, 2022.  The Board argues that the time period should begin in March 1, 2020 because the Board "needs to determine what happened to Atlantic Veal's production and processing work that was eliminated from its Brooklyn facility in December 2021, including whether there was relocation or subcontracting of that work."  See Joint Letter, ECF No. 34 at 3. This opening date is particularly relevant because the COVID-19 pandemic has been suggested as a reason for the changes in work in Brooklyn.  Respondents argue that the period is overbroad and propose a one-year period (six months before and six months after) the December 2021 elimination of Brooklyn production and processing work.  See id. at 4.  Given that Respondents' claimed changes in operations in response to the COVID-19 pandemic are relevant to the Board's inquiry, the Court finds that the Board's proposed 22-month period is not overbroad, and that documents arising from that time period likely touch on the matter of the investigation.  The Board's proposed time period is approved.

### b.  Disputed Subpoena Requests

### i.  Atlantic Veal Subpoena Item 3; Ohio Farms Subpoena Item 3

Documents, including written and electronic communication, by and between [Atlantic Veal/Ohio Farms] and any other entity, including but not limited to [Ohio Farms/Atlantic Veal], mentioning, discussing, or referring to Atlantic Veal's plan or intention to transfer and/or eliminate bargaining unit production and processing work from its Brooklyn facility, including by whom and when such documents were sent or received.

6

Respondents do not object to these requests, but state that "the documents sought . . . will be produced through compliance with [Atlantic Veal Subpoena Item 2].  As Respondents do not object, they are directed to respond to the requests and produce the documents sought therein, even if those documents are called for in Atlantic Veal Subpoena Item 2.

### ii.  Atlantic Veal Subpoena Items 4 and 5; Ohio Farms Subpoena Item 4[1]

Documents that show Atlantic Veal's monthly production and processing volume by pounds and dollar value at its Brooklyn facility.

Documents that show Atlantic Veal's and/or Ohio Farms monthly production and processing volume by pounds and dollar value at its Creston, Ohio facility.

Documents that show Ohio Farms' monthly production and processing volume by pounds and dollar value at its Creston, Ohio facility.

Respondents do not object to these requests to the extent that they seek documents showing monthly production and processing volume by pound because Respondents maintain records containing that data.  Respondents do object to producing documents showing production and processing volume by dollar value, as Respondents do not maintain documents containing that data.  As discussed during the August 10, 2023 status conference, the Board is not requesting that Respondents create any documents that are not already in existence.  See 8/10/2023 Transcript, ECF No. 41 at 29:25-30:1.  Respondents are therefore directed to produce any existing documents in their possession that are responsive to the above-referenced requests.

### iii.  Atlantic Veal Subpoena Item 8; Ohio Farms Subpoena Item 7

Articles of Incorporation, Articles of Organization, Partnership Agreements, and other documents reflecting [Atlantic Veal/Ohio Farm]'s creation as a legal entity, including any modifications or amendments to these documents, created at any time.

---

[1] The parties' submissions are inconsistent as to the numbering of the Ohio Farms subpoena.  See ECF Nos. 34, 34-2, 38, 39.  The Court assumes that original Ohio Farms Subpoena Items 1 and 2 have been withdrawn and renumbers the paragraphs in ECF No. 34-2 accordingly.

The Board only argues that these documents are relevant to Respondents' alleged alter ego/single employer status.  Respondents argue that these documents are irrelevant in light of Respondents' stipulation that Atlantic Veal and Ohio Farms are alter egos and a single employer under the National Labor Relations Act.  In light of the stipulation, and because the Board makes no other argument as to the documents' relevance, Respondents need not produce them.

### iv.  Atlantic Veal Subpoena Item 11; Ohio Farms Subpoena Item 10

Meeting minutes, voting records, resolutions and other documents describing all meetings of the Board of Directors, Managers, or partners of [Atlantic Veal/Ohio Farms], during the period covered by this subpoena.

The Board argues that Atlantic Veal Subpoena Item 11 "seeks decisional documents pertaining to Atlantic Veal's elimination of production and processing work at its Brooklyn facility, which may have been ongoing as early as the beginning of the pandemic due to Atlantic Veal's claimed reduction in sales resulting from the pandemic" and argues that the request "would also go to show whether the elimination of the production and processing work in Brooklyn was accompanied by any change in the nature and scope of the operation."  See Joint Letter, ECF No. 34 at 10.  The Board argues that Ohio Farms Subpoena Item 10 seeks documents relevant to any absorption of Atlantic Veal's Brooklyn facility's operations, and any change in the nature and scope of operations.  See id. at 33.  Respondents argue that the requests are unreasonable and overbroad and that any responsive documents will be provided via compliance Atlantic Veal Subpoena Items 1-5.  See id. at 11, 33. The Court agrees with the Board that the documents sought may be relevant to show decisions made regarding Atlantic Veal's operations during the subject time period, particularly as to any change in the scope of operations at the respective facilities.  Respondents have not demonstrated that responding to the requests would be unreasonably burdensome.  Respondents must respond to the requests.

### v.  Atlantic Veal Subpoena Item 15; Ohio Farms Subpoena Item 14

Balance sheets and other documents that show any asset held by [Atlantic Veal/Ohio Farms], including documents which show the identity, value, date of acquisition, and date of divestiture (if any) of each asset during the period covered by this subpoena.

The Board seeks these documents to investigate whether Respondents acquired or divested assets to prepare for any change in its production or processing work, and to investigate changes in the nature and scope of Respondents' operations.  See id. at 12, 36.  Respondents object on the grounds that the requests are unreasonable and overbroad and that the relevant documents will be provided via compliance with Atlantic Veal Subpoena Items 1-5.  See id. at 12-13, 33.  The Court agrees with the Board that documents showing Respondents' acquisition and divestiture of assets may be relevant to show their preparation and reasons for changing their scope of operations in Brooklyn.  Although Respondents claim that the requests are overbroad, they have not demonstrated that responding to the requests would be unreasonably burdensome.  Respondents must respond to the requests.

### vi.  Atlantic Veal Subpoena Item 16; Ohio Farms Subpoena Item 15

Documents submitted as or in connection with all applications for loans, mortgages, or lines of credit made by [Atlantic Veal/Ohio Farms] for any operations [in the State of Ohio/related to Atlantic Veal], including documents provided in support of the application and documents which show the identity of the lending institution, the determination on the application, the amount of any loan or mortgage, the payment terms, the security interest provided, and the amounts of principal and interest paid and outstanding during the time period covered by this subpoena.

The Board seeks these documents to explore whether Respondents applied for loans, mortgages or lines of credit in preparation for any change in production and processing work or in response to its claimed loss of revenue, or in preparation for Ohio Farms to absorb Atlantic Veal's operations.  See id. at 13, 36.  Respondents object on the grounds that the requests are unreasonable and overbroad and that the relevant documents will be provided via compliance

with Atlantic Veal Subpoena Items 1-5.  See id. at 13, 36.  The Court agrees with the Board that

documents pertaining to loan, mortgage and credit applications may be relevant to show

preparation for any change in Respondents' scope of operations.  Although Respondents claim

that the requests are overbroad, they have not demonstrated that responding to the requests

would be unreasonably burdensome.  Respondents must respond to the requests.

### vii.   Atlantic Veal Subpoena Item 17; Ohio Farms Subpoena Item 16

Documents reflecting all loans from [Atlantic Veal to Ohio Farms/Ohio Farms to
Atlantic Veal], or any other entity affiliated with or related to [Ohio
Farms/Atlantic Veal], including but not limited to promissory notes, deeds of
trust, mortgages, agreements, corporate resolutions, and spreadsheets or other
documents showing the amount of loans, payments, additional loans, and interest
during the time period covered by this subpoena.

The Board seeks these documents to determine whether Respondents granted each other

loans "as early as the beginning of the pandemic in preparation for any transfer or subcontracting

of work."  See id. at 14, 36.  Respondents object on the grounds that the requests are

unreasonable and overbroad and that the relevant documents will be provided via compliance

with Atlantic Veal Subpoena Items 1-5.  See id. at 14, 36-37.  The Court agrees with the Board

that documents pertaining to loans between Atlantic Veal and Ohio Farms may be relevant to

show preparation for any transfer of operations.  Although Respondents claim that the requests

are overbroad, they have not demonstrated that responding to the requests would be

unreasonably burdensome.  Respondents must respond to the requests.

### viii.   Atlantic Veal Subpoena Item 18; Ohio Farms Subpoena Item 17

Documents which show the gift, lease, sale or transfer of any goods, equipment,
property, supplies, services, or any other thing of value from [Atlantic Veal/Ohio
Farms] to [Ohio Farms/Atlantic Veal], or any other entity affiliated with or related
to Ohio Farms, including documents that show for each transaction:

a) the kind, price, and quantity of all goods, equipment, property, supplies and
services or any other things of value involved;

10

b) the name and job title of the person(s) requesting or requisitioning each such transaction; and

c) the name and job title of the person(s) who approved or authorized each such transaction for each party involved in the transaction.

The Board seeks these documents to determine whether Respondents exchanged supplies or services in preparation for any transfer or subcontracting work and to show any change in the nature and scope of Respondents' operations.  See id. at 14, 37.  Respondents object on the grounds that the requests are unreasonable and overbroad and that the relevant documents will be provided via compliance with Atlantic Veal Subpoena Items 1-5.  See id. 15, 37.  The Court agrees with the Board that documents pertaining to transfers of goods between Atlantic Veal and Ohio Farms may be relevant to show preparation for any transfer of operations or change in the scope of operations.  Although Respondents claim that the requests are overbroad, they have not demonstrated that responding to the requests would be unreasonably burdensome.  Respondents must respond to the requests.

### ix.  Atlantic Veal Subpoena Item 19; Ohio Farms Subpoena Item 18

Documents that show all addresses from which [Atlantic Veal/Ohio Farms] conducted business at any point during the period covered by this subpoena.

The Board seeks these documents to explore locations from which Respondents perform work, which could provide evidence of whether elimination of work was not akin to a decision to go out of the production and processing business, or whether Respondents relocated work to other facilities.  See id. at 15, 37-38.  Respondents object on the grounds that the relevant documents will be provided via compliance with Atlantic Veal Subpoena Items 1-5.[2]  See id. at 15, 38.  The Court agrees with the Board that documents pertaining to business addresses may be

---

[2] Respondents do not raise this objection in their 8/9/2023 letter.  See ECF No. 38.

relevant to any elimination or change in the scope of operations at Respondents' facilities. Respondents do not argue that production would be unreasonably burdensome. Respondents must respond to the requests.

### x. Atlantic Veal Subpoena Item 22; Ohio Farms Subpoena Item 21

> Bank statements, checks, records of deposits and withdrawals and all other documents connected with all financial accounts and instruments of deposit controlled by [Atlantic Veal/Ohio Farms] during the period covered by the subpoena.

The Board seeks these documents to determine whether Respondents engaged in financial transactions in anticipation of any transfer or subcontracting of work; whether Atlantic Veal ceased its Brooklyn facility's production and processing operations due to lost revenue; whether there was a change in the nature of scope of operations; and whether labor costs factored into any decisions. See id. at 16-17, 39. Respondents object on the grounds that the requests are unreasonable and overbroad and that the relevant documents will be provided via compliance with Atlantic Veal Subpoena Items 1-5. See id. at 17, 39. As discussed above, the Board has not shown that the individual documents are reasonably relevant to its investigation. Respondents must produce the requested bank statements, but need not produce additional documents, i.e., checks, records of deposits and withdrawals, the information as to which would be included in the statements, and "all other documents connected with all financial accounts and instruments of deposit" at this time. If, upon receiving the requested bank statements, the Board can show that additional documents may be relevant to its investigation, it may seek further documents from Respondents, subject to any objections Respondents may have to those specific requests.

### xi. Atlantic Veal Subpoena Item 23; Ohio Farms Subpoena Item 22

> Financial statements prepared for, or submitted to, any third parties, including, but not limited to, financial institutions, bonding companies, and insurance providers at any time during the period covered by this subpoena.

12

The Board seeks these documents to determine whether Respondents engaged in financial transactions in anticipation of any transfer or subcontracting work; whether Atlantic Veal ceased its Brooklyn facility's production and processing operations due to lost revenue; and whether labor costs factored into any decisions.  See id. at 17, 40.  Respondents object on the grounds that the requests are unreasonable and overbroad and that the relevant documents will be provided via compliance with Atlantic Veal Subpoena Items 1-5.  See id. at 17, 40.  The Court agrees with the Board that the financial documents sought may be relevant to show preparation for any transfer of operations, as well as revenues or costs that may have factored into decisions regarding any change in the scope of operations.  Although Respondents claim that the requests are overbroad, they have not demonstrated that responding to the requests would be unreasonably burdensome.  Respondents must respond to the requests.

### xii.   Atlantic Veal Subpoena Item 24; Ohio Farms Subpoena 23

Guaranty agreements executed by [Atlantic Veal/Ohio Farms] or [Atlantic Veal/Ohio Farms]'s owner(s) on behalf of [Ohio Farms/Atlantic Veal], or any other entity affiliated with or related to [Ohio Farms/Atlantic Veal], during the period covered by this subpoena.

The Board seeks these documents to determine whether Atlantic Veal "engaged in certain financial transactions in anticipation of any transfer or subcontracting of work as early as the beginning of the pandemic [and] whether there was any legitimate change in the nature and scope of the operation that accompanied the cessation of the production and processing work in Brooklyn."  See id. at 18, 41.  Respondents object on the grounds that the requests are unreasonable and overbroad and that the relevant documents will be provided via compliance with Atlantic Veal Subpoena Items 1-5.  See id. at 18, 41.  The Court agrees with the Board that guaranty agreements may be relevant to show financial transactions relating to transferring or subcontracting work or change in the scope of operations.  Although Respondents claim that the

13

requests are overbroad, they have not demonstrated that responding to the requests would be unreasonably burdensome.  Respondents must respond to the requests.

### xiii.   Atlantic Veal Subpoena Item 25; Ohio Farms Subpoena Item 24

Documents submitted by [Atlantic Veal/Ohio Farms] to financial institutions to obtain or renew a line of credit at any time during the period covered by this subpoena.

The Board seeks these documents to determine whether Respondents "engaged in certain financial transactions in anticipation of any transfer or subcontracting of work as early as the beginning of the pandemic[;] . . . whether there was any legitimate change in the nature and scope of the operation that accompanied the cessation of the production and processing work in Brooklyn[;] and whether labor costs played a role in this decision."  See id. at 18, 40. Respondents object on the grounds that the requests are overbroad and that the relevant documents will be provided via compliance with Atlantic Veal Subpoena Items 1-5.  See id. at 19, 40.  The Court agrees with the Board that documents showing that Respondents sought lines of credit may be relevant to show financial transactions made in anticipation of transferring or subcontracting work or changing the scope of operations, including in response to labor costs. Although Respondents claim that the requests are overbroad, they have not demonstrated that responding to the requests would be unreasonably burdensome.  Respondents must respond to the requests.

### xiv.   Atlantic Veal Subpoena Item 26; Ohio Farms Subpoena Item 25

Documents submitted to all bonding agents or companies [] to obtain performance or payment bonds at any time during the period covered by this subpoena.

The Board seeks these documents to determine whether Respondents "engaged in certain financial transactions in anticipation of any transfer or subcontracting of work as early as the beginning of the pandemic [and ] whether there was any legitimate change in the nature and

14

scope of the operation that accompanied the cessation of the production and processing work in Brooklyn." See id. at 19, 41. Respondents object on the grounds that the requests are unreasonable and overbroad and that the relevant documents will be provided via compliance with Atlantic Veal Subpoena Items 1-5. See id. at 19, 42. The Court agrees with the Board that documents pertaining to bonds may be relevant to show financial transactions made in anticipation of transferring or subcontracting work or changing the scope of operations. Although Respondents claim that the requests are overbroad, they have not demonstrated that responding to the requests would be unreasonably burdensome. Respondents must respond to the requests.

### xv.  Atlantic Veal Subpoena Item 27; Ohio Farms Subpoena Item 26

Correspondence, contracts, agreements, bills of sale, bills of lading, invoices, purchase orders, receipts and any other documents showing the receipt of goods, materials, or services by [Atlantic Veal/Ohio Farms] from January 1, 2020, through December 31, 2022.

The Board seeks these documents to determine whether Respondents' claim that Atlantic Veal lost revenue is accurate and to show any change in nature and scope of the operation. See id. at 20, 42. Respondents object on the grounds that the requests are unreasonable and overbroad and that the relevant documents will be provided via compliance with Atlantic Veal Subpoena Items 1-5. See id. at 20, 42. As discussed above, the Board has not sufficiently demonstrated that the individual documents in this request are reasonably relevant to its investigation. Respondents must produce any documents they maintain that memorialize or summarize Respondents' business operations for the relevant time period, but they need not produce the individual documents requested. If, upon receiving documents pertaining to Respondents' business operations for the relevant time period, the Board can show that

additional documents may be relevant to its investigation, it may seek those documents from Respondents, subject to any objections Respondents may have.

### xvi.   Atlantic Veal Subpoena Item 29; Ohio Farms Subpoena Item 28

Documents that show all quotes or bids submitted by [Atlantic Veal/Ohio Farms] or any of its officers, directors or agents to any person or entity at any time during the period covered by this subpoena, including documents showing responses and any resulting contracts or agreements.

The Board seeks these documents to determine whether Respondents gave out "quotes or bids for its production and processing work to be completed elsewhere as early as the beginning of the pandemic[; . . .] whether there was any legitimate change in the nature and scope of the operation[;] or whether labor costs were a factor in the decision to cease production and processing operations in Brooklyn." See id. at 21, 43.  Respondents object on the grounds that the requests are unreasonable and overbroad and that the relevant documents will be provided via compliance with Atlantic Veal Subpoena Items 1-5.  See id. at 21, 43.  The Court agrees with the Board that documents pertaining to quotes or bids for contracts may be relevant to show whether Atlantic Veal made bids for contracts based on anticipated operation at other facilities, including the Ohio Facility, as well as information about labor costs.  Although Respondents claim that the requests are overbroad, they have not demonstrated that responding to the requests would be unreasonably burdensome.  Respondents must respond to the requests.

### xvii.   Atlantic Veal Subpoena Item 30; Ohio Farms Subpoena Item 29

Documents that show the purchase, rental, or acquisition of all supplies, furniture, equipment, facility, vehicle, or other asset used by [Atlantic Veal/Ohio Farms] in the operation of its business at any time during the period covered by this subpoena.

The Board seeks these documents to determine whether Respondents' "purchase, rental or acquisition of supplies and equipment decreased commiserate with its alleged decrease in revenue starting from the beginning of the pandemic[;]whether such acquisition of supplies and

equipment increased at any of its other facilities relative to its production and processing operations[; and] to show any changes in the nature and scope of the operation[s]." See id. at 22, 44.  Respondents object on the grounds that the requests are unreasonable and overbroad and that the relevant documents will be provided via compliance with Atlantic Veal Subpoena Items 1-5. See id. at 22, 44.  As discussed above, the Board has not sufficiently demonstrated that its request as to "all supplies" is reasonably relevant, as the request covers all of Respondents' day-to-day operations, which is beyond the scope of the inquiry.  Respondents must respond to the requests other than as to supplies.  If, upon receiving the responsive documents other than as to supplies, the Board can sufficiently demonstrate that documents relating to supplies may be relevant to its investigation, it may seek those documents from Respondents, subject to any objections Respondents may have.

### xviii.   Atlantic Veal Subpoena Item 31; Ohio Farms Subpoena Item 30

> Documents which show the sale, lease, or disposition of any asset, equipment or vehicle used by [Atlantic Veal/Ohio Farms] in the operation of its business at any time during the period covered by this subpoena.

The Board seeks these documents to determine "whether Atlantic Veal sold, leased, or disposed of any assets commiserate [sic] with its alleged decrease in revenue and purported closing of its production and processing business, including such records showing the sale or lease of production and processing equipment and vehicles previously utilized in Brooklyn, starting from the beginning of the pandemic[; and] to show any change in the nature and scope of the operation[s]."  See id. at 22-23, 44.  Respondents object on the grounds that the requests are unreasonable and overbroad and that the relevant documents will be provided via compliance with Atlantic Veal Subpoena Items 1-5.  See id. at 22, 44.  The Court agrees with the Board that documents pertaining to lease, sale or disposal of business assets may be relevant to changes in Respondents' revenue and changes in location and/or scope of Respondents' operations.

17

Although Respondents claim that the requests are overbroad, they have not demonstrated that responding to the requests would be unreasonably burdensome.  Respondents must respond to the requests.

### xix.   Atlantic Veal Subpoena Item 32; Ohio Farms Subpoena Item 31

Documents showing all credit or charge card accounts controlled by [Atlantic Veal/Ohio Farms] during the period covered by this subpoena, including documents showing all transactions on such accounts, payments to such accounts, and balances.

The Board seeks these documents to determine whether Respondents "engaged in certain financial transactions in anticipation of any transfer or subcontracting of work as early as the beginning of the pandemic[; . . .]  whether it spent less at its Brooklyn facility commiserate [sic] with its alleged decrease in revenue as early as the beginning of the pandemic and running through its cessation of production and processing operations in Brooklyn[; and to] show any change in the nature and scope of the operation."  See id. at 23, 44-45.  Respondents object on the grounds that the requests are unreasonable and overbroad and that the relevant documents will be provided via compliance with Atlantic Veal Subpoena Items 1-5.  See id. at 24, 45.  As discussed above, the Board has not sufficiently demonstrated that the requests are reasonably relevant, as they cover all of Respondents' transactions well beyond the scope of the inquiry into the change of venue for some operations.  Respondents must produce documents showing summaries and balances of all credit or charge card accounts during the relevant time period, but they need not produce documents showing all transactions on such accounts or payments to such accounts.  If, upon receiving the responsive documents, the Board can demonstrate that additional documents may be relevant to its investigation, it may seek those documents from Respondents, subject to any objections Respondents may have.

### xx.   Atlantic Veal Subpoena Item 33; Ohio Farms Subpoena Item 32

All letters, e-mails, and all other correspondence between [Atlantic Veal/Ohio Farms] and its customers and/or suppliers concerning its production and processing operations at [either its Brooklyn or Creston, Ohio/its Creston Ohio] facility from October 18, 2019, to December 31, 2022.

The Board seeks these documents to determine whether Respondents "engaged in certain financial transactions captured in such communications in anticipation of any transfer or subcontracting of work as early as the beginning of the pandemic[; . . .] whether these communications are consistent with Atlantic Veal [sic] unsubstantiated claim of a decrease in revenue as early as the beginning of the pandemic and running through its cessation of production and processing operations in Brooklyn[; and] to show any redirection of production and processing work and whether such was accompanied by any change in the nature and scope of the operation." See id. at 24, 45.  Respondents object on the grounds that the requests are overbroad and that the relevant documents will be provided via compliance with Atlantic Veal Subpoena Items 1-5.  See id. at 25, 45.  The Court agrees with the Board that communications regarding Respondents' production and operations at its Brooklyn and Ohio facilities may be relevant to substantiate Respondents' claim of lost revenue during the pandemic and any change in the nature or scope of work done at the facilities.  Although Respondents claim that the requests are overbroad, they have not demonstrated that responding to the requests would be unreasonably burdensome.  Respondents must respond to the requests.

### xxi.   Atlantic Veal Subpoena Item 34

Documents showing the entity or entities who have been providing production and processing of meat product for Atlantic's Veal's Brooklyn facility since December 17, 2021, including but not limited to any contracts or agreements setting forth the terms of those arrangements, including but not limited to costs and manpower.

The Board seeks these documents to "show how Atlantic Veal is fulfilling its producing and processing needs after the elimination of the production and processing work in Brooklyn and after laying off the bargaining unit, and [to determine] whether the terms of any such arrangements are more cost-effective than the terms that were in place for the bargaining unit employees previously performing the work." See id. at 25. Respondents object on the grounds that the request is overbroad and that the relevant documents will be provided via compliance with Atlantic Veal Subpoena Items 1-5. See id. The Court agrees with the Board that documents showing entities that have provided production and processing of meat for Atlantic Veal's Brooklyn facility may be relevant to show changes in costs associated with any changes in operations. Although Respondents claim that the requests are overbroad, they have not demonstrated that responding to the requests would be unreasonably burdensome. Respondents must respond to the requests.

### xxii.  Ohio Farms Subpoena Items 1-2

The Board has agreed to withdraw Ohio Farms Subpoena Items 1-2 if Ohio Farms stipulates to the Board's jurisdiction over it. See id. at 29. Ohio Farms has agreed to make that stipulation, in which case these requests will become moot. See id. Based on the numbering set forth in the submission at ECF No. 39, it appears the paragraphs have been withdrawn, and the Court deems the requests moot.

### III. Attorneys' Fees And Costs

The Federal Rules of Civil Procedure apply to proceedings to enforce NLRB subpoenas. See Fed. R. Civ. P. 81(a)(5), (a)(6)(E). Under Rule 54, "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." In addition, courts have held that "sanctions under Rules 37 and 45 for failure to comply with discovery requests and subpoenas are made available in NLRB enforcement

actions by virtue of Rule 81." Nat'l Lab. Rels. Bd. v. DN Callahan, Inc., No. 18 Misc. 879

(LDH) (CLP), 2018 WL 4190153, at *6 (E.D.N.Y. Aug. 7, 2018) (collecting cases), report &

recommendation adopted, 2018 WL 4185704 (E.D.N.Y. Aug. 31, 2018); see NLRB v. Cable Car

Advertisers, Inc., 319 F. Supp. 2d 991, 999-1000 (N.D. Cal. 2004); NLRB v. Graveley Bros.

Roofing Corp., No. 98-3054, 1999 WL 1075117, at *1 (3d Cir. Jan. 14, 1999); NLRB v.

Coughlin, No. 04 Misc. 8, 2005 WL 850964, at *5 (S.D. Ill. Mar. 4, 2005); NLRB v. A.G.F.

Sports Ltd., No. 93 Misc. 049, 1994 WL 507779, at *1-2 (E.D.N.Y. June 22, 1994).  Under Rule

37, if a motion to compel is granted in part and denied in part, "the court may issue any

protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard,

apportion the reasonable expenses for the motion."  Fed. R. Civ. P. 37(a)(5)(C).

 The Board argues that it is entitled to attorneys' fees and costs incurred in initiating and

prosecuting this subpoena enforcement action under Rules 54 and 37.  See Board Memo., ECF

No. 1-2 at 26.  It also argues that the Court should exercise its inherent power to issue sanctions

for bad-faith litigation behavior.  Id.  Respondents argue that the Board is not entitled to fees and

costs because the Regional Director did not seek sanctions in its opposition to Respondents'

Petition to Revoke the Subpoena, and because the Board refused to provide information to

Respondents about the investigation and the relevance of documents sought in order to facilitate

the document production.  See Resps. Memo, ECF No. 18 at 14-15.

 In light of this Order, each party prevailed as to certain aspects of the motion practice.

The parties are encouraged to discuss a voluntary resolution of any attorneys' fees issue.  If they

do not resolve their issues, under Federal Rule of Civil Procedure 37(a)(5)(C), any motion may

be submitted by November 7, 2023 and any opposition by November 14, 2023.  No replies are

permitted.  The Court does not find that Respondents engaged in any bad-faith conduct; rather,

the Respondents' counsel reasonably engaged with the Board to focus the production on issues relevant to the investigation.  In addition, the Board expanded its rationale for some of its requests over the course of the proceedings and litigation such that Respondents' requests for clarification were reasonable and not in bad faith.

### IV. Conclusion

For the foregoing reasons, the Board's Application to enforce the subpoenas is granted in part and denied in part, and Respondents' opposition is granted in part and denied in part, as explained above.  In responding to the subpoenas, Respondents may designate documents confidential and the Board must treat them as such pending any execution of a confidentiality agreement. The current request for attorneys' fees is denied without prejudice and may be raised as permitted above.

Dated: Brooklyn, New York
       October 31, 2023

_Vera M. Scanlon_
VERA M. SCANLON
United States Magistrate Judge